Miles **CHRISTMAN**, Plaintiff-Appellant,

v.

Albert **SKINNER** et al., Defendants-Appellees.

No. 1, Docket 72–1055.

United States Court of Appeals, Second Circuit.

Submitted Sept. 11, 1972.

Decided Oct. 30, 1972.

Stanley A. Bass, New York City, and David C. Leven, Rochester, N. Y., on the brief, for appellant.

William J. Stevens, Rochester, N. Y., and Michael K. Consedine, of counsel, on the brief, for appellees.

Before FRIENDLY, Chief Judge, and LUMBARD and FEINBERG, Circuit Judges.

LUMBARD, Circuit Judge:

Miles Christman appeals from an order by Judge Burke of the Western District that dismissed plaintiff-appellant's complaint for failure to raise a substantial federal question. Christman brought this action under 42 U.S.C. § 1983 against the Sheriff of Monroe County and his Lieutenant in charge of the county jail. He initially sought both injunctive relief and money damages. Since Christman is no longer an inmate of the jail, any injunctive relief is now moot.

Christman was incarcerated in Monroe County jail from June 1, 1971, to August 30, 1971. He was charged with drunken driving and was placed in the jail pending the disposition of a possible parole violation charge. While he was in jail, he brought this § 1983 action alleging that some of the treatment he

received by defendants infringed his federally protected rights. Since the parole board decided not to charge Christman with violation of his parole, he was released from jail on the day of the hearing on his motion for a preliminary injunction. The district court thereupon denied Christman's motion for a preliminary injunction on the grounds of mootness and failure to show irreparable damage. Christman has not here asserted that the denial of the injunction was error. In addition, on motion of the defendants for dismissal or, in the alternative, for summary judgment, the court, without holding an evidentiary hearing, dismissed the complaint for failure to raise a substantial federal question.

■■ In his complaint, Christman asserted five causes of action based on several alleged violations by defendants of his federally protected rights. During his incarceration, Christman instituted an action in the state courts to enjoin defendants from cutting the facial hair of inmates awaiting trial. Subsequently, he circulated a memorandum among the inmates informing them of the commencement of this state-court action. In his first cause of action, Christman alleged that, in retaliation for circulating this memorandum, he was placed in isolation for three days and then placed in a cell with two other inmates who were instructed not to mingle with him. Christman asserts that this action violated his federally protected right of access to the courts, and that he was denied due process by defendants' failure to accord him an administrative hearing before the imposition of punishment.

We hold that the dismissal of Christman's first cause of action was proper. Christman did not assert that he was punished because of his commencement of the state court action, but only because he circulated his memorandum to the other inmates. The action that de-

fendants took was addressed to maintaining order and discipline among the inmates. Therefore, Christman did not present a question of discriminatory treatment because of his petitioning the state court; hence, this court's language in Sostre v. McGinnis, 442 F.2d 178, 189 (2d Cir. 1971), is inapposite. Instead, defendants' actions fall within the wide discretion that courts have traditionally conceded to prison officials in matters of prison discipline and security. See Smith v. Schneckloth, 414 F.2d 680, 681 (9th Cir. 1969), and cases there cited.

Christman's due process claim was also properly rejected. The action taken here by defendants was not so much intended as a punishment as it was designed to preserve order in the jail. Moreover, any punishment that may be inferred was certainly minimal in contrast to the forfeiture of "good time" credit that we considered in Sostre v. McGinnis, *supra*. An additional factor is that Christman admitted to defendants that he circulated the memorandum, thus eliminating any dispute about the facts. Therefore, we do not find that defendants here infringed the minimal due process requirements that Sostre required. 442 F.2d at 198.

■■ In his second cause of action, Christman asserted that all prisoner correspondence with attorneys was, pursuant to the New York Code of Rules and Regulations,[1] censored by jail officials. Since it is clear that defendants were acting pursuant to these regulations and it was not claimed that they acted maliciously or in wanton disregard of plaintiff's rights, defendants are protected from suit by a qualified privilege, which they have not exceeded. Nelson v. Knox, 256 F.2d 312, 315 (6th Cir. 1958). But Christman also asserted several instances in which jail guards, who were subordinates of defendants, failed to mail letters to his attorney. *Sostre* made it clear that jail officials are not

---

1. The applicable regulations have since been amended so that prisoner correspondence with attorneys is no longer subject to censorship. See Wilkinson v. Skinner, 2 Cir., 462 F.2d 670, 672 note 4.

permitted to refuse to mail a communication between an inmate and an attorney. 442 F.2d at 200.

■ Defendants rely on the fact that the complaint does not allege that they ever participated in this refusal to mail the letters. But we do not believe that this fact could justify dismissal of the complaint. Plaintiff gave the letters to the guards, the subordinates of defendants to whom he would ordinarily have given them, and the letters were not mailed. At a hearing, he might be able to prove defendants' participation or acquiescence in this activity. Accordingly, since there is an issue here of the denial by defendants of plaintiff's federally protected right to correspond with his attorney, it was error for the district court to dismiss plaintiff's second cause of action.

■■ Christman's third cause of action is based on the jail policy prohibiting inmates from receiving books and magazines from outside the jail, which he attacks as unconstitutionally overbroad. From the affidavits submitted by defendants in opposition to the motion for a preliminary injunction, it appears that this policy is predicated on the New York Correction Rules and Regulations. Although there may be some question about whether it was proper to consider this affidavit on the motion to dismiss without giving plaintiff the opportunity to submit counter-affidavits, it was proper for the court to take judicial notice of these regulations. Since these regulations have not been heretofore declared unconstitutional and since there is no allegation that defendants acted maliciously or in wanton disregard of plaintiff's rights, we again find defendants to be privileged from a suit for damages. *Nelson, supra.*

■ Plaintiff alleged in his fourth cause of action that defendants violated his right of privacy by monitoring his conversations with visitors. The district court was correct in dismissing this cause of action, for plaintiff's claim is foreclosed by Lanza v. New York, 370 U.S. 139, 143, 82 S.Ct. 1218, 1221, 8 L. Ed.2d 384 (1962), where the Supreme Court indicated "that a jail shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room."

■ In his fifth cause of action, Christman asserted that defendants subjected him to several forms of harassment after he filed his action against defendants in the state courts. The complaint alleges four forms of harassment: 1) degrading strip-searches after every outside visit; 2) prohibition from associating with fellow inmates; 3) visual surveillance of Christman's visits with his attorney; and 4) denial of access to gym facilities on an equal basis with other inmates. With regard to the alleged surveillance, we find it difficult to conclude that this constituted harassment since it does not appear to have interfered with Christman's communications with his attorney. As to the strip-searching, in their affidavit in opposition to the preliminary injunction, defendants asserted that other inmates were also strip-searched in the same fashion as Christman as a matter of jail policy. Although this would negate this portion of the alleged harassment, we are again doubtful that the district court could consider the affidavit on the motion to dismiss without treating it as a motion for summary judgment and thus giving plaintiff an opportunity to submit counter-affidavits. But we need not resolve this question; for we are of the opinion that the other alleged acts of defendants, if in fact they constituted discriminatory treatment of the plaintiff, could be shown at an evidentiary hearing to have been in retaliation for Christman's commencement of the suit in state court against the defendants. If this were shown, Christman would establish a violation of his federally protected rights and thus a claim for recovery against defendants under § 1983. Therefore, this portion of the complaint did raise a substantial federal question and it was error for the district court to dismiss it.

Accordingly, we reverse the district court's dismissal of Christman's second and fifth causes of action and affirm its dismissal of the first, third, and fourth causes of action.

Although it is indeed difficult to imagine what injuries compensable with money damages plaintiff will be able to demonstrate on the remand of the second and fifth causes of action, it would be inappropriate for us to conclude that he cannot do so as a matter of law. While we appreciate the burden that the many actions of this sort are creating for the district courts, we have seen too many instances in which time has been lost, rather than saved, by their attempting to decide conflicting versions of the facts on the basis of affidavits. Consideration might well be given to the utilization of federal magistrates, at least to narrow the factual issues.

FEINBERG, Circuit Judge (concurring in part and dissenting in part):

I dissent from so much of the majority opinion as affirms dismissal of the first, third and fourth causes of action. I fully appreciate the time-consuming burden that this and similar cases impose on our district courts and have suggested that federal legislation to deal with the problem may be appropriate.[1] In the absence of a legislative solution, however—particularly when this case must now be tried in any event on the second and fifth causes of action—I cannot agree that the problem should be solved by a rigid construction of the pleadings or by misapplied principles of qualified official immunity or by exclusive reliance on a dictum in Lanza v. New York, 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962).

In my view, Christman's first cause of action fairly alleges harassment, by means of two separate instances of extraordinary confinement,[2] in order to intimidate him prior to contemplated court action and to punish him for pursuing efforts to obtain judicial relief. The complaint does, to be sure, allude to the memorandum to inmates as well as to violation of appellant's first amendment rights of free speech and association. But it also alleges retaliation for Christman's exercise of his right to petition the government for a redress of grievances—an allegation which, on the facts of this case, can only refer to his state court suit to enjoin cutting of the facial hair of pre-trial detainees. Construing the complaint liberally, as we must on a motion to dismiss, I would hold that the first cause of action presents the substantial federal question of interference with prisoner access to the courts. See Sostre v. McGinnis, 442 F.2d 178, 200–201 (2d Cir. 1971), cert. denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972) and 405 U.S. 978 (1972); cf. Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969).

The third cause of action claims that restrictions on inmate receipt of reading material violated the first, ninth and fourteenth amendments,[3] and seeks damages therefor. The majority affirms dismissal because Christman failed to allege that the defendants' actions, pur-

---

1. Rodriguez v. McGinnis, 456 F.2d 79, 83 (2d Cir.) (concurring opinion), cert. granted sub nom. Oswald v. Rodriguez, 407 U.S. 919, 92 S.Ct. 2459, 32 L.Ed.2d 805 (1972).

2. Christman was placed in isolation on June 1, 1971, the day prior to commencement of his eventually successful state court suit. He was subsequently reconfined on June 24, with two "civil" prisoners who were instructed not to mix with or talk to him.

3. Even limited restrictions on reading material have been invalidated by courts of appeals in other circuits, see Jackson v. Godwin, 400 F.2d 529, 541 (5th Cir. 1968); Long v. Parker, 390 F.2d 816, 822 (3d Cir. 1968), and by at least one district court in our own. Fortune Society v. McGinnis, 319 F.Supp. 901 (S.D.N.Y.1970) (Weinfeld, J.). The constitutionality of the blanket prohibition authorized by the regulations in effect during Christman's incarceration thus surely presents a substantial federal question. Cf. Note, Prison Mail Censorship and the First Amendment, 81 Yale L.J. 87 (1971).

suant to a then presumably valid regulation, were prompted by bad faith or wanton disregard of plaintiff's rights. Although here, too, I would read the complaint more charitably,[4] I am unable, in any event, to find warrant for placing this stringent burden of pleading on the plaintiff. Pierson v. Ray, 386 U.S. 547, 555–557, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), which recognized the substantive basis of a "good faith" defense at least in the section 1983 damage suit then before the Court,[5] cannot be read to justify this pleading burden; the Court emphasized that "the *defense* of good faith and probable cause . . . is also available to [the officers] . . . in the action under § 1983. This holding does not, however, mean that the count based thereon should be dismissed." Id. at 557, 87 S.Ct. at 1219. (Emphasis added.) Indeed, the *Pierson* Court distinguished earlier language in Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), as follows:

> We also held [in *Monroe*] that the complaint should not be dismissed for failure to state that the officers had "a specific intent to deprive a person

of a federal right," but this holding, which related to requirements of pleading, carried no implications as to which defenses would be available.
. . .

386 U.S. at 556, 87 S.Ct. at 1219. Taken together, *Pierson* and *Monroe* recognize good faith as an affirmative defense and place at least the burden of pleading on a section 1983 defendant.[6] Accordingly, on this count I would reverse and remand to give defendants an opportunity to place their good faith in issue before the trier of fact and to give Christman an opportunity to show bad faith harassment through discriminatory and personalized enforcement of the allegedly unconstitutional regulation.[7]

Finally, I regard the language of the four-man Supreme Court majority in Lanza v. New York, 370 U.S. 139, 143, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962), as an inadequate basis on which to dismiss the fourth cause of action, which alleged that Christman's conversation with his sister was "monitored" shortly after he instituted suit in the state courts. After expressing doubt whether a prison

---

4. As to each and every cause of action, the plaintiff alleges that his action
   seeks to alleviate unconstitutional actions which have been and are being performed by jail personnel at the Monroe County Jail under, upon information and belief, the supervision and control of Defendants with their knowledge and consent.
   I would construe this paragraph, specifying a knowing deprivation of constitutional rights, as sufficient to allege malice.

5. Cf. Judge Wyzanski's interesting discussions of the good faith defense in section 1983 damage suits in Rose Chalet Functions Corp. v. Evans, 264 F.Supp. 790, 796–797 (D.Mass.1967), noted in 55 Geo. L.J. 1168 (1967), and Richards v. Thurston, 304 F.Supp. 449, 456–457 (D.Mass. 1969).

6. Nelson v. Knox, 256 F.2d 312 (6th Cir. 1958), relied on by the majority, in no way suggests a different allocation of pleading burden. It is true that the trial court there found no suggestion of bad

faith or wanton disregard, but it did so only after two days of trial hearing, upon "substantial evidence."

7. The majority repeats this error when it affirms dismissal of that part of the second cause of action, which complains of "censorship" (which I take to be reading) of Christman's mail to his attorney. The majority distinguishes between censorship and refusal to mail, remanding as to the latter but dismissing as to the former on the ground of "qualified privilege." I concur in the dismissal on the strength of our decisions in Sostre v. McGinnis, supra, 442 F.2d at 201, and Wright v. McMann, 460 F.2d 126, 131–132 (2d Cir. 1972). In view of the adoption by the New York Department of Correctional Services of new rules regarding censorship, see Wilkinson v. Skinner, 462 F.2d 670, 671 & n. 3 (2d Cir. 1972), I do not believe that this is an appropriate case to consider whether "this aspect of *Sostre* . . . might bear re-examination." See Wright v. McMann, supra, 460 F.2d at 136 (concurring opinion of Oakes, J.).

was a constitutionally protected zone of privacy, Mr. Justice Stewart's opinion assumed arguendo that it was, but reasoned that the exclusionary rule would probably not operate to bar questions propounded by a legislative investigating committee which were derived from conversation "unlawfully" overheard through eavesdropping devices. Id. at 145, 82 S.Ct. 1218. Regardless, said the Court, "the ultimate constitutional claim asserted . . ., whatever its merits, is simply not tendered by this record," id. at 147, 82 S.Ct. at 1223, because petitioner's contempt conviction resulted as well from his refusal to answer questions in no way traceable to any eavesdropping. In Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the Court defined fourth amendment protection as prohibiting warrantless electronic eavesdropping under circumstances in which a person had a justifiable reliance on privacy. The plurality opinion in United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), which construed the *Katz* standard to bar eavesdropping only when an individual can anticipate no risk that his words will be disclosed, admittedly reinforces the *Lanza* dictum. The question remains whether the state has an absolute right to monitor all conversations under all circumstances between a prisoner and those visiting him. Given the uncertain state of the authorities, I am unwilling to accept that view, and, on the slender record before us, would not hold that Christman's complaint fails to allege a substantial federal question, particularly when it is suggested that official eavesdropping commenced only after plaintiff sought judicial redress.

I should add that I share both the majority's view that damages will be difficult to establish and its reluctance to so hold as a matter of law. And I join so much of the majority opinion as reverses dismissal of the second and fifth causes of action.