Masia A. MUKMUK, also known as Sylvester Cholmondeley, Plaintiff,

v.

COMMISSIONER OF the DEPARTMENT OF CORRECTIONAL SERVICES et al., Defendants.

No. 70 Civ. 3518.

United States District Court,
S. D. New York.

Jan. 14, 1974.

Elizabeth M. Fisher, Cambridge, Mass., for plaintiff.

Louis J. Lefkowitz, Atty. Gen., New York City, for defendants; David R. Spiegel, Deputy Asst. Atty. Gen., of counsel.

## MEMORANDUM

BONSAL, District Judge.

Defendants move pursuant to Rule 12(c), Fed.R.Civ.P., for judgment on the pleadings, or in the alternative, for summary judgment pursuant to Rule 56, Fed.R.Civ.P. Plaintiff has cross moved for leave to add parties, to amend the complaint, and for summary judgment.

Plaintiff, Sylvester Cholmondeley, also known as Masia Mukmuk, is presently confined to Great Meadow Correctional Facility pursuant to a judgment of conviction in Queens County Court on June 29, 1960. He was convicted for the crimes of rape in the first degree, burglary in the third degree, and robbery in the third degree, for which he was sentenced to serve the following terms of imprisonment: 10 to 20 years on the rape conviction, 5 to 10 years on the burglary conviction, and 5 to 10 years on the robbery conviction. The sentences on the burglary and robbery convictions are concurrent with each other, but consecutive to the sentence on the rape conviction.

Plaintiff instituted this action pursuant to 42 U.S.C. § 1983 on August 14, 1970. Jurisdiction is claimed under 28 U.S.C. § 1343. His original complaint (the "August 14, 1970 complaint"), filed while he was an inmate at Green Haven Correctional Facility, alleged that when he was transferred to Green Haven on February 7, 1970, some books and magazines were "confiscated by agents of defendant Zelker [Superintendent of Green Haven Correctional Facility from June 11, 1970 to March 29, 1972] and have not been returned," and that he was improperly disciplined on July 28, 1970 by being placed in solitary confinement for teaching karate in the exercise yard. He sought an injunction ordering the defendant to return to him his personal writings, books, and magazines and to release him from solitary confinement. Plaintiff moved by order to show cause for a preliminary injunction. However, the problems for which his motion was presented were adjusted by agreement between the parties, and the motion was accordingly dismissed on consent and without prejudice by Judge Frankel on August 21, 1970.

On December 17, 1970, plaintiff filed an amended complaint (the "December 17, 1970 complaint") setting forth approximately 15 occasions on which he

was punished for prison-rule infractions during the year 1970, usually by being "keeplocked" in his cell for short periods ranging up to 20 days, by being placed in solitary confinement, or by the loss of "good time" or recreation privileges. He alleged that these disciplinary measures were taken as a result of his espousal of the Black Muslim religion while in prison.

By notice of motion filed May 14, 1971, plaintiff petitioned the court to adjourn until early fall of 1971, the consolidated trial on the merits and hearing on the application for a preliminary injunction, originally noticed for May 19, 1971, and also petitioned for leave to file an amended complaint. By order dated May 17, 1971 and filed October 15, 1971, Judge Motley denied without prejudice the application for a preliminary injunction and granted the plaintiff's motion for leave to file an amended complaint.

On October 15, 1971, plaintiff filed an amended complaint (the "October 15, 1971 complaint")—toward which the defendants' present motion is directed—in which he alleges that he has been mistreated by prison authorities in connection with rule infractions beginning with his first confinement in New York State prisons on August 29, 1960 and continuing to the present. His complaint sets forth approximately 80 such instances. Alleging that these disciplinary measures constituted a denial of his constitutional rights, he seeks a "final injunction against the wrongs complained of in this Complaint," a declaratory judgment and restoration of the good time which he claims to have lost by reason of the alleged mistreatment by prison authorities, and damages in the amount of $100,000 for "the cruel and unusual punishment to which he has been subjected," plus costs and attorneys fees. This complaint does not allege that he has previously exhausted his State remedies with respect to these claims.

On November 1, 1971, defendants filed a motion to dismiss the October 15, 1971 complaint on the grounds that venue in the Southern District of New York was improper and that the defendants were improperly named in the complaint under the doctrine of *respondeat superior*. Judge Brieant denied the motion by endorsement on November 23, 1971, and defendants filed their answer on February 16, 1972.

There followed an interlude during which no action was taken on the case until September 22, 1972, when defendants moved to dismiss for failure to prosecute. In opposition to this motion, plaintiff's counsel filed an affidavit in which she stated that "the period of dormancy in this case . . . coincided with certain developments in the plaintiff's situation that made the pursuit of legal redress an unwise tactic." On the return date of the motion, plaintiff's counsel advised the court that she was ready to proceed with the action, pending the discovery of certain documents which she believed to be in the possession of the Department of Correction. On October 30, 1972, the court denied the motion to dismiss and set December 1, 1972 as the date for the submission of a Pretrial Order.

On March 16, 1973, plaintiff moved for a preliminary injunction seeking to enjoin the defendants from transferring the plaintiff to a rehabilitation program and ordering that the plaintiff be placed in federal protective custody pending the disposition of this action. By memorandum filed on April 20, 1973, the motion for a preliminary injunction was denied and the parties were directed to file a Pretrial Order at the earliest possible time.

On March 28, 1973, plaintiff filed a motion seeking discovery of all disciplinary reports, records, and other documents pertaining to the plaintiff, including daily journals and segregation log books from each of the prisons at which plaintiff had been confined. This motion was referred to Magistrate Jacobs, and a hearing was held on April 3, 1973. At the hearing, it was agreed that the defendants would produce any writings from their files which made specific ref-

erence to the plaintiff; any writings, or references to writings, by the plaintiff; any correspondence between the plaintiff and Department of Correction officials; any writings which made reference to the plaintiff as a Black Muslim or to Muslims generally at any institution where plaintiff was at any time confined; and any writings referring in any way to any policy at any institution with respect to Muslims. In addition, defendants agreed to make available for inspection the segregation log books and daily journals referring to the days in which the plaintiff was in segregation or in which he was the subject of disciplinary action. Defendants were not required to produce any documents reflecting personal opinions or work product in connection with litigation. As a result of this agreement, the plaintiff's motion was withdrawn.

In spite of the attempts by the Magistrate to work out a Pretrial Order and despite the volume of discovery material produced, no Pretrial Order has been filed. On October 5, 1973, defendants filed the present motion for judgment on the pleadings or for summary judgment. The motion was originally made returnable on October 23, but it was later adjourned to November 5, 1973. On October 30, 1973, plaintiff filed his motion for leave to add parties, to amend the complaint, and for summary judgment.

■ With respect to their motion for judgment on the pleadings, defendants contend that under the Supreme Court's recent decision in Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), a civil rights action seeking the restoration of good conduct time credits must be treated as a petition for a writ of habeas corpus with the attendant requirement that a plaintiff must exhaust his available State remedies pursuant to 28 U.S.C. § 2254 before presenting his claims to a Federal court. Defendants contend that this is such an action, even though the second amended complaint includes a prayer for damages and injunctive relief, which the defend-ants claim are "obviously tangential" to the "primary thrust of plaintiff's complaint," to secure his earlier release from confinement. Plaintiff, who has been represented by counsel since the commencement of this action, contends that *Preiser* does not apply to that part of the complaint seeking damages and an injunction.

With respect to good time, because of his prison disciplinary record, which, according to the defendants, is one of the worst ever compiled by a New York State prisoner, plaintiff's loss of good time as of the filing of the October 15, 1971 complaint was 1,915 days, which would have made him ineligible for conditional release until 1979. Had plaintiff received the same allowances as a model prisoner, on the other hand, he would have been eligible for conditional release on July 17, 1973. At present, plaintiff will be eligible for conditional release on February 22, 1975. This revised date was the result of a thorough review of plaintiff's disciplinary record in May, June, and early July, 1973, after which the Department of Correction in its discretion restored approximately 1,400 days of good time to plaintiff.

*Preiser* involved three New York State prisoners who were placed in segregation and deprived of good conduct time credits as a result of prison disciplinary proceedings. Each commenced a *pro se* action by filing a combined civil rights complaint and petition for habeas corpus relief. Alleging that they had been unconstitutionally deprived of the good-time credits, they sought an injunction to compel the restoration of the credits, which in each case would have resulted in their immediate release from confinement. The Supreme Court held:

"[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate or speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." 411 U.S. at 500, 93 S.Ct. at 1841.

In a footnote, Justice Stewart wrote for the Court:

"If a prisoner seeks to attack both the conditions of his confinement and the fact or length of that confinement, his latter claim, under our decision today, is cognizable only in federal habeas corpus, with its attendant requirement of exhaustion of state remedies. But, consistent with our prior decisions, that holding in no way precludes him from simultaneously litigating in federal court, under § 1983, his claim relating to the conditions of his confinement." 411 U.S. at 499 n. 14, 93 S.Ct. at 1841.

Accordingly, insofar as the October 15, 1971 complaint seeks the restoration of good time, it is treated as a petition for a writ of habeas corpus, which must be denied for the failure of the plaintiff to exhaust his available State remedies.

■ With respect to plaintiff's claims for damages and an injunction—claims relating to the conditions of his confinement—the complaint must also be dismissed. Plaintiff complains of being placed in a segregation unit; of being confined on various occasions in a "strip cell" containing only a toilet, sink, and a bed; of being keeplocked; and of being disciplined for prison-rule infractions by loss of good time and recreation privileges. In addition, he alleges generally that he has been subjected to "a continuing course of harrassment [sic]" because he is a Black Muslim. These allegations are disputed by the defendants in the Spiegel affidavit dated October 2, 1973. Treating the allegations as true, however, it is nevertheless well settled that correctional authorities have wide discretion in matters of internal prison administration and that reasonable action within the scope of this discretion does not violate a prisoner's constitutional rights. Christman v. Skinner, 468 F.2d 723, 725 (2d Cir. 1972); Sostre v. McGinnis, 334 F.2d 906, 908 (2d Cir.), cert. denied, 379 U.S. 892, 85 S.Ct. 168, 13 L. Ed.2d 96 (1964). *See* Smith v. Schneckloth, 414 F.2d 680, 681 (9th Cir. 1969),

and cases cited therein. In Corby v. Conboy, 457 F.2d 251, 254 & n. 2 (2d Cir. 1972), for example, the Court of Appeals held that in view of this discretion accorded correctional authorities, claims of insufficient warm clothing, inadequate diet, poor lighting, lack of personal hygiene supplies and hot water, harassment, and discipline for refusal to accept employment—claims similar to those raised here—did not state a claim for which relief could be granted.

■ Moreover, plaintiff has not alleged that the named defendants personally played any part in the alleged denials of his constitutional rights. As the court stated in Johnson v. Glick, 481 F. 2d 1028, 1034 (2d Cir. 1973):

"The rule in this circuit is that when monetary damages are sought under § 1983, the general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required."

Thus, the complaint also lacks the required specificity to state a claim for damages under the Civil Rights Laws. See also Powell v. Jarvis, 460 F.2d 551, 553 (2d Cir. 1972).

Plaintiff's complaint does not include any allegations that the defendants prevented him from communicating with his attorneys or with the court or hindered him from preparing legal papers. See Corby v. Conboy, *supra.* And accepting the October 15, 1971 complaint's allegations as true, it does not appear that the plaintiff has been subjected to cruel or unusual punishment for his prison-rule infractions nor denied due process under the requirements of Sostre v. McGinnis, 442 F.2d 178 (2d Cir. 1971) (en banc), cert. denied sub nom., Sostre v. Oswald, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972). See Christman v. Skinner, 468 F.2d 723, 725 (2d Cir. 1972).

For the foregoing reasons, the complaint fails to state a cause of action. Since the pleadings and affidavits show that there is no issue of fact for trial,

defendants' motion for summary judgment is granted.

 Plaintiff's motion for leave to add parties, to amend the complaint, and for summary judgment was made on October 30, 1973, just prior to the return date of the defendants' motion. The proposed amended complaint, also dated October 30, 1973, which would be the third amended complaint in this action, simply sets forth in greater detail what is contained in the October 15, 1971 complaint, and in addition it lists more recent instances of alleged mistreatment. It appears from the plaintiff's disciplinary record that he has not lost any good time as a result of these most recent incidents, for which the plaintiff has usually been keeplocked for short periods. In view of the prior three complaints and the dilatory prosecution of this action by plaintiff, the court will not delay this action's disposition further by permitting another complaint to be filed. Accordingly, plaintiff's motion for leave to add parties, to amend the complaint, and for summary judgment is denied.

Defendants may settle judgment on notice.

It is so ordered.