**Richard Dale STOVER**

v.

**Norman CARLSON, Director, United States Bureau of Prisons, et al.**

**Civ. No. B–76–8.**

United States District Court,
D. Connecticut.

Feb. 27, 1976.

Richard Dale Stover, pro se.

Raymond L. Sweigart, Asst. U. S. Atty., New Haven, Conn., for respondents.

## MEMORANDUM OF DECISION

NEWMAN, District Judge.

Petitioner, presently incarcerated at the Federal Correctional Institution, Danbury, has filed a writ of habeas corpus challenging the sufficiency of the prison's law library. The respondents have answered and submitted factual affidavits. No material facts are in dispute, and therefore a decision on the merits of petitioner's constitutional claim may appropriately be rendered at this time. *Cf. Christman v. Skinner*, 468 F.2d 723, 727 (2d Cir. 1972).

Both parties agree that the FCI Danbury library contains volumes of the *United States Supreme Court Reporter* covering the time period from 1950 to the present. They also agree that at least all *Federal Reporters Second Series* from volume 452 to the present may be found in the library. Portions of volumes 385 to 451 may also be found in the library. Thus an inmate has access to every case decided by a circuit court of appeals since late 1971 and to a large number of cases decided prior to that year. The parties also agree that at a minimum a complete set of *Federal Supplements* beginning with volume 336 is present in the library. Sections of the *Federal Supplement* for volumes 300 to 335 are also present. Thus an inmate has access to all district court decisions reported since late 1971.

The library also contains virtually an entire set of the *United States Code Annotated*, an entire set of volumes comprising the *Modern Federal Practice Digest, Corpus Juris Secundum*, a legal encyclopedia, two editions of *Black's Law Dictionary*, a comprehensive set of *Shepard's Citations*, the *Criminal Law Reporter*, the entire *Martindale-Hubbell Law Directory*, several volumes of the *Yale Law Journal* and the *Fordham Law Review* as well as various miscellaneous legal works.

■ The issue raised by the petitioner is whether this law library provides the inmate with resources sufficient to afford him due process, specifically access to the courts.[1] In *Gilmore v. Lynch*, 319

---

1. The view of the Bureau of Prisons as to the precise dimensions of the quantum of research materials required to provide meaningful access to the courts, while clearly not determinative of the constitutional claim, should be given some weight as it indicates the manner in

F.Supp. 105 (N.D.Cal.1970) (three-judge court), *aff'd sub nom. Younger v. Gilmore,* 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971), the Supreme Court affirmed a three-judge district court's holding that in the absence of a program whereby Public Defenders or law students were made available to inmates on a regular basis, a law library at a prison was an indispensable component of meaningful access to the courts. The district court in *Gilmore* did not decide what the precise composition of a prison law library would have to be in order to afford a prisoner adequate access to the courts. Rather that court left to the prison administrators the determination of a system best geared to permitting such meaningful access. *Gilmore v. Lynch, supra* at 112.

In a subsequent case the Ninth Circuit Court of Appeals affirmed a district court judge's ruling that the law library at the Federal Prison Camp, Safford, Arizona, was required to contain *United States Supreme Court Reports* beginning with volume 300, *Federal Reporter Second Series* beginning with volume 275 and *Federal Supplements* beginning with volume 200. *Gaglie v. Ulibarri,* 507 F.2d 721 (9th Cir. 1974). That court noted that "we do not decide whether some lesser number of research materials than ordered by the [district] court would be sufficient, as the issue was not presented here or in the court below." *Id.* at 722.

The petitioner in this case asks that this Court order the respondents to acquire additional books for the Danbury FCI law library. There has been no showing, however, that this petitioner is being denied meaningful access to the

courts by the absence of some older case reporters from the institution's law library.[2] Certainly the library provides a prisoner with enough information to enable him to discover whether or not he has rights that may be vindicated in the federal courts. *Cf. Mead v. Parker,* 464 F.2d 1108, 1110 (9th Cir. 1972); *Campbell v. Beto,* 460 F.2d 765, 769 (5th Cir. 1972). Indeed, the vast bulk of the cases dealing with prisoner's rights are to be found within the library as are cases that would inform a prisoner of any grounds for appeal of his original conviction.

■ Significantly, neither *Gilmore* nor *Gaglie* held that the denial of a *complete* prison library or even denial of *any* prison library would necessarily constitute a denial of due process. Access to the courts for federal prisoners is guaranteed by the Fifth Amendment. Such access must be meaningful but it need not be derived from any specific source. *Cruz v. Hauck,* 515 F.2d 322, 331 (5th Cir. 1975); *Souza v. Travisono,* 498 F.2d 1120, 1123 n.6 (1st Cir. 1974); *Hampton v. Schauer,* 361 F.Supp. 641, 643 (D.Colo. 1973). Inmates at Danbury have continuous access to an excellent legal assistance project administered by Yale Legal Services. Coupled with the existing substantial library facilities, the availability of such assistance assures that any inmate desirous of bringing a problem to the attention of a court may do so. This is all that the Constitution requires. *Brown v. Sielaff,* 363 F.Supp. 703, 707 (W.D.Pa.1973).

■■ The proper test to be applied in this case is that enunciated in *Procunier*

---

which the administrators most apprised of the conditions of daily prison life would resolve the conflict between the needs of the inmates and the requirements of efficient prison administration. However, in considering the merits of petitioner's claim this Court must independently evaluate the constitutionality of the FCI Danbury library facilities, and while such an evaluation may consider the view of the Bureau of Prisons, it may not wholly defer to it. *Cruz v. Beto,* 405 U.S. 319, 321, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263, 267 (1972) (*per curiam*).

2. The petition states that "By not having an adequate selection of Legal Material (sic) it is highly unlikely that a prisoner will be successful in his efforts to vindicate himself." Other than this and similar conclusory allegations contained within the petition, there is no indication of what specific material is necessary to the adequate preparation of either a criminal appeal or a civil action. Furthermore, there is no allegation that petitioner or any other inmate has been denied meaningful access to the courts as a result of the inadequacy of the prison law library.

*v. Martinez,* 416 U.S. 396, 420, 94 S.Ct. 1800, 1815, 40 L.Ed.2d 224, 244 (1974):

The extent to which [a] right is burdened by a particular regulation or practice must be weighed against the legitimate interests of penal administration and the proper regard judges should give to the expertise and discretionary authority of correctional authorities.

In the present case there has been no showing that the right of prisoners to have meaningful access to the courts has been burdened at all. On the other hand the cost to the Bureau of Prisons for the acquisition of a complete set of *Federal Supplements, Federal Reporters,* and *United States Reports* for all federal institutions would be extremely high. Given the limited budget of the Bureau of Prisons, the respondent administrators have struck a salutary balance between the rights of federal inmates to have access to the courts and the need to spend the government's money carefully. Absent any basis to find that petitioner's Fifth Amendment rights have been violated, this Court declines to order the respondents to provide more extensive library facilities than those set out in Bureau of Prisons Policy Statement 2001.2B (May 8, 1972). *Brown v. Sielaff, supra; Hampton v. Schauer, supra; Collins v. Schoonfield,* 344 F.Supp. 257, 280–81 (D.Md.1972).

Accordingly, the petition is dismissed on the merits. The papers may be filed without fee.