Caswell LATHAN, Jr., Plaintiff,

v.

Russell G. OSWALD, Commissioner of the Department of Correctional Services, et al., Defendants.

No. 72 Civ. 5391.

United States District Court,
S. D. New York.

June 4, 1973.

Caswell Lathan, Jr., pro se.

Jerold Probst, Deputy Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., State of New York, of counsel), for defendants.

BAUMAN, District Judge.

Plaintiff, Caswell Lathan, Jr., brings this action pursuant to 42 U.S.C. § 1983 and its jurisdictional complement, 28 U.S.C. § 1343(3), alleging violation of rights secured by the Sixth, Eighth and Fourteenth Amendments.[1] Before the court is the motion of the Attorney General of the State of New York, acting on behalf of all defendants, for an order dismissing the complaint for failure to state a cause of action or, in the alternative, granting defendants summary judgment.

On June 24, 1960, plaintiff was convicted of first degree murder in the County Court, Bronx County and was thereafter sentenced to life imprison-

---

1. Because plaintiff is not challenging the fact or duration of his physical confinement, he has properly chosen to proceed by way of § 1983. See Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

ment. He started his confinement at the Auburn Correctional Facility in Auburn, New York and remained there (with the exception of a brief interlude not relevant here) through May 30, 1972. Next day he was transferred to the Green Haven Correctional Facility at Stormville, New York, having previously been notified of the impending transfer and given the opportunity to pack his personal belongings in sacks for shipment. Included among his very substantial[2] accumulation of possessions were 50½ cartons of cigarettes. When the contents of the sacks were inventoried at Green Haven, he was understandably shocked to discover that they contained only 22 cartons and immediately wrote first to defendant Vincent and then to defendant Henderson complaining of his loss.

To add insult to injury, a few days later, on June 4, 1972, plaintiff, upon returning to his cell, found 21 of his remaining 22 cartons of cigarettes gone.

During the months that followed plaintiff doggedly sought compensation for these losses. He wrote numerous letters to defendant Vincent, conferred with Joseph Ronsini, a counselor at Green Haven, and corresponded with the Prisoner's Rights Project of the New York Legal Aid Society. In September, 1972 it was finally agreed that plaintiff would be compensated for the loss of the 21 cartons by having his account at the prison commissary credited with an appropriate amount of money.

On October 21, 1972, plaintiff's cell was again looted, this time of a substantial quantity of groceries, the value of which he conservatively estimates at $389.80 for which he has not been compensated. He alleges that he then became so upset at these continuing thefts that he requested placement in the maximum security area of the prison (segregation) so that his property might be

more secure. He also alleges that he became emotionally distraught, and was unable to sleep or eat properly in the following weeks.

In his complaint, plaintiff sets forth three separate but interrelated causes of action. He first charges that prison officials were implicated in the theft of his cigarettes and groceries, either by stealing the goods themselves or permitting other inmates to do so. That being the case, he contends that the action of the prison officials constitutes a deprivation of property without due process of law. Second, he claims that the refusal of prison officials to permit him to telephone a lawyer while he was in segregation deprived him of needed legal assistance and violated his rights secured by the Sixth Amendment. Finally, plaintiff alleges that the mental anguish which resulted from these thefts, and the need to request confinement in segregation constituted cruel and unusual punishment in violation of the Eighth Amendment.

Defendants do not really adduce any coherent arguments in support of their motion to dismiss. Their position seems to be rather that plaintiff's arguments are so beneath contempt that no response is warranted. In support of their Rule 12(b)6 motion, they urge that plaintiff at most charges negligence on the part of prison officials, and that such negligence is not actionable under § 1983. A thorough reading of plaintiff's highly detailed and remarkably cogent complaint reveals that he charges more than mere negligence: he charges the prison guards with complicity in the thefts, and alleges a deliberate refusal to permit him the use of the telephone.

Insofar as defendants also deem theirs to be a motion for summary judgment, they have utterly failed to comply with Rule 9(g) of the General Rules of this court.[3] Too, it is abundantly clear

---

2. The inventory of his property taken at the Auburn Correctional Facility lists, inter alia, the following items: 25 cans of sardines, 28 cans of soda, 13 bars of soap, 24 jars of honey, 7 jackets, 26 white shirts, and 50 socks.

3. Rule 9(g) states, in pertinent part:
   "Upon any motion for summary judgment pursuant to Rule 56 of the Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement of the ma-

that all of plaintiff's claims raise triable issues of fact that have not been resolved by the affidavits and documentary evidence offered by defendants.

Although the insubstantiality of defendants' motion does not require me to go any further, I deem it useful to make clear that the instant complaint does state a cause of action under § 1983. In so doing I of course do not suggest that there is any merit to plaintiff's allegations; indeed, he may have great difficulty proving them at trial. I hold only that the allegations themselves are sufficient to survive a motion to dismiss.

Prior to the Supreme Court's decision in Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), the law of this Circuit would have required the dismissal of plaintiff's first contention. Our Court of Appeals had held, in Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969), that an action arising out of the mere infringement of property rights was not cognizable under 28 U.S.C. § 1343 and 42 U.S.C. § 1983. Following Justice Stone's dissent in Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), the court interpreted § 1343(3) to confer jurisdiction only on actions alleging deprivation of "personal liberty." See also Bradford Audio Corporation v. Pious, 392 F.2d 67 (2d Cir. 1968): "to qualify under § 1983 the right sought to be enforced must in the main be one incapable of pecuniary evaluation . . . ."

The Second Circuit's reading of 28 U. S.C. § 1343(3) and 42 U.S.C. § 1983 has generally been followed in cases where prisoners have sued prison officials for confiscation or theft of property. Indeed, every reported case that my research has located holds that the mere deprivation of property is not actionable under § 1983. See, e. g., Urbano v. Calissi, 384 F.2d 909 (3d Cir. 1967), cert.

denied, 391 U.S. 925, 88 S.Ct. 1824, 20 L.Ed.2d 664 (1968); Kimble v. Department of Corrections, 411 F.2d 990 (6th Cir. 1969); Collins v. State of Florida, 432 F.2d 60 (5th Cir. 1970); Brown v. Wainwright, 419 F.2d 1308 (5th Cir. 1970); United States ex rel. Pope v. Hendricks, 326 F.Supp. 699 (E.D.Pa. 1971).

However, the *Eisen* distinction between personal and property rights was explicitly renounced by the Supreme Court in *Lynch*, supra, at 542, 92 S.Ct. 1113 at 1117. The Court there stated: "This Court has never adopted the distinction between personal liberties and proprietary rights as a guide to the contours of § 1343(3) jurisdiction. [Footnote omitted] Today we expressly reject that distinction." A detailed study of the predecessors of 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983, first enacted in the Civil Rights Act of 1871, 17 Stat. 13, confirms the Court's conclusion that "the Congress that enacted the predecessor of §§ 1983 and 1343(3) seems clearly to have intended to provide a federal judicial forum for the redress of wrongful deprivations of property by persons acting under color of state law."

In *Lynch* the Court not only repudiated *Eisen*; in my view, it also undermined the rationale of the line of cases cited above, denying prisoners the right to sue for deprivation of their personal property. Accordingly, I decline to follow them, and I hold that plaintiff has stated a cause of action under §§ 1983 and 1343(3) by alleging that prison officials participated in or abetted the theft of his property.

Plaintiff has, however, failed to state a cause of action against any of the three prison officials named as defendants here. He does not allege that either Oswald, Henderson or Vincent were in any way involved in the theft of his

terial facts as to which the moving party contends there is no genuine issue to be tried."

The 9(g) statement appended to the instant motion, however, merely recites that

"[d]efendants . . . contend that there is no genuine issue of material fact as to any of plaintiff's claim." That is patently inadequate.

property; these gentlemen were rather the unsympathetic recipients of the numerous letters of complaint which he wrote after the alleged thefts took place. Plaintiff does have a cause of action here, but it is against the prison guards or other officials who handled his belongings and who permitted or participated in the thefts from his cells. It is now well settled that although § 1983 authorizes the award of compensatory and punitive damages, liability thereunder is entirely personal. A state official may not be held liable under a theory of *respondeat superior*. Sostre v. McGinnis, 442 F.2d 178 (2d Cir. 1971), cert. denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972) and 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972); Harty v. Rockefeller, 338 F.Supp. 367 (S.D.N.Y.1972); Palermo v. Rockefeller, 323 F.Supp. 478 (S.D.N.Y.1971); Salazar v. Dowd, 256 F.Supp. 220 (D.Colo. 1966); Jordan v. Kelly, 223 F.Supp. 731 (W.D.Mo.1963). Because the first cause of action alleges no more than vicarious involvement as to the three named defendants, it must be dismissed as to them. Plaintiff, however, is hereby given ninety (90) days from the filing of this opinion to file an amended complaint naming those prison officials whom he alleges to have actually permitted or participated in the events described in his first cause of action.

■ I also conclude that plaintiff's second contention, that he was deprived of his Sixth Amendment rights by being denied the use of a telephone to call his lawyer, is actionable under §§ 1983 and 1343(3). At page 9 of his complaint plaintiff notes that Green Haven permits inmates to call members of their families on weekends and occasionally on weekdays as well. Those placed in segregation, however, are deprived of this privilege and may only use the telephone in the event of an emergency. Plaintiff, as has already been noted, volunteered for segregation, and thus his confinement there did not carry with it the deprivation of all privileges that is the usual concomitant of such treatment.

Defendants' sole response to this contention is to invoke the bromide that "plaintiff is bound to do more than state vague and conclusory allegations respecting his claim against defendants." Plaintiff has in fact devoted four pages of his complaint (pp. 9–12) to describing at least five separate occasions on which he was refused the use of a telephone. I am frankly at a loss to understand how his narrative could be less vague or conclusory.

■■ The prisoner's right of access to the courts was firmly established in Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). It has subsequently been interpreted to mean that the state may not hinder a prisoner in his preparation of legal papers, or impede his correspondence with courts, lawyers, or even law book publishers. Prison officials may not confiscate an inmate's lawbooks, and may not impose any sanction for engaging in legal activities on his own behalf or for the benefit of fellow inmates. See generally, Corby v. Conboy, 457 F.2d 251 (2d Cir. 1972); Campbell v. Beto, 460 F.2d 765 (5th Cir. 1972). It has been recognized, furthermore, that the right of unimpeded access to courts implies a similar right of access to legal assistance. In Wells v. McGinnis, 344 F.Supp. 594 (S.D.N.Y.1972), Judge Gurfein held that a prisoner's contention that the prison was interfering with his correspondence with his lawyer was sufficient to state a cause of action under § 1983. He deemed this contention a "serious charge", and noted that "channels of communication between a prisoner and his counsel must be kept open." I agree with this observation, and find it equally applicable to the allegations plaintiff has made here. Plaintiff has not been guilty of such conduct as to cause the revocation of his privileges, and I can find no reason why a phone call to his lawyer should not have been permitted. Since such calls are apparently permitted generally, no extraordinary procedures need have been invoked nor any disciplinary schemes disrupted. Under

these circumstances, the refusal to allow communication with a lawyer would be violative of the Sixth Amendment if plaintiff can prove this refusal at trial.

 In this claim, however, plaintiff has only stated a cause of action against defendant Vincent, to whom, among others, he attributes the decision to deny him use of a telephone. Defendants Oswald and Henderson have no apparent involvement in this decision, which pertains to the internal administration of the Green Haven prison. The second cause of action is therefore dismissed as to them.

For his third cause of action plaintiff contends that the negligence, bad faith, and dilatory tactics employed by the defendants in failing to respond to his demands for compensation caused him intense emotional distress and thus constituted cruel and unusual punishment in violation of his rights under the Eighth Amendment. He seeks damages of $10,000. This claim is wholly without merit; the complaint, no matter how liberally construed, does not portray a concerted course of conduct on the part of prison officials whose purpose was the infliction of suffering on this plaintiff. At worst it depicts the indifference and insensitivity characteristic of some who operate prisons. I am unaware of any case holding that administrative insensitivity amounts to cruel and unusual punishment, and I decline to so hold. See generally, Wright v. McMann, 387 F.2d 519 (2d Cir. 1967); Church v. Hegstrom, 416 F.2d 449 (2d Cir. 1969); Sostre v. McGinnis, 442 F.2d 178 (2d Cir. 1971); Martinez v. Mancusi, 443 F.2d 921 (2d Cir. 1970). Accordingly, plaintiff's third cause of action is dismissed.

In conclusion, plaintiff has failed to state a claim against Oswald and Henderson, and the complaint is dismissed as to these defendants. Plaintiff has also failed to state a claim against Vincent in his first and third causes of action, and these counts are dismissed as to him. The second cause of action

against Vincent survives. In addition, plaintiff is given ninety (90) days from the filing of this opinion to file an amended first cause of action naming proper parties.

It is so ordered.