**Jorge SPRAU, Plaintiff,**

v.

**Thomas A. COUGHLIN, III, et al., Defendants.**

No. 93–CV–6507L.

United States District Court, W.D. New York.

March 3, 1998.

Jorge Sprau, Great Meadow Correctional Facility, Comstock, NY, pro se.

Emil J. Bove, Office of N.Y. State Atty. Gen., Rochester, NY, for Defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

This action is brought pursuant to 42 U.S.C. § 1983. Plaintiff, Jorge Sprau ("plaintiff"), alleges that defendants, Commissioner of Corrections Thomas Coughlin ("Coughlin"), Inspector General Brian Malone ("Malone"), Superintendent Walter Kelly ("Kelly"), and Correction Officer Donald Carriero ("Carriero"), violated his constitutional rights while he was incarcerated at Attica Correctional Facility. Pending before the Court is defendants' motion for summary judgment.

### FACTUAL BACKGROUND

Plaintiff claims that on September 11, 1993, Carriero approached him in the exercise yard and demanded his identification card. When plaintiff asked why his card was being taken, Carriero informed plaintiff that another correction officer had told Carriero to take it. Plaintiff immediately requested that officer's name. Carriero responded that he could not give plaintiff that information. Plaintiff informed Carriero that he was going

to report him not only for taking his identification card, but also for refusing to tell him the name of the officer that had initially requested it. At that point, Carriero ordered plaintiff to his cell.

As plaintiff was walking back to his cell, Carriero and two other officers approached him. Carriero told plaintiff to put his hands on the wall for a pat frisk. Carriero then grabbed plaintiff from behind the neck and hit him across the neck and face and in the eye several times. Each time Carriero hit plaintiff, he dared plaintiff to write a complaint against him. Carriero then told plaintiff to go directly to his cell, where he was placed in keeplock confinement. Later that evening, plaintiff received Ibuprofen and a bag of ice from the health center for his injuries. Plaintiff wrote to Kelly, Coughlin, and Malone to inform them of the incident.

Defendants offer a significantly different version of events. Defendants maintain that on the evening in question, plaintiff was observed talking through the windows in the exercise yard, which is a violation of facility rules. When the tower officer ordered plaintiff to stop, plaintiff responded with an obscene gesture. Carriero approached plaintiff and brought him to the platform officer for identification. Plaintiff was ordered into keeplock confinement in anticipation of a misbehavior report. Carriero maintains that he escorted plaintiff back to his cell, but denies that he frisked him. Carriero also asserts that no incident of any kind occurred while he was escorting plaintiff back to his cell and that plaintiff suffered no injuries while in Carriero's presence.

As a result of the incident in the yard, Correction Officer Daniels issued a misbehavior report against plaintiff for refusing a direct order, engaging in verbal harassment, violating rules relating to inmate movement, and refusing to produce identification. Plaintiff was found guilty of the first three offenses at a Tier II hearing held on September 15, 1993.

Plaintiff wrote to Kelly on September 15, 1993, alleging that Carriero had assaulted him. Kelly referred the complaint to Lieutenant Perkins for investigation. Based on that investigation, no action was taken. Kelly maintains that plaintiff's complaint regarding the incident was properly investigated and denied. Further, although plaintiff claims that he also wrote to Coughlin and Malone regarding the incident, Coughlin and Malone did not receive any communications from plaintiff either before or after the incident. Plaintiff also filed a grievance on October 27, 1993 against Carriero for harassment. Based on an investigation, it was determined that plaintiff's allegations were unfounded, and the grievance was denied on November 15, 1993.

## DISCUSSION

In this action, plaintiff alleges that defendants: (1) deprived him of his rights to freedom of speech and to petition the government for redress of grievances under the First Amendment; (2) inflicted cruel and unusual punishment on him in violation of the Eighth Amendment; and (3) deprived him of equal protection under the Fourteenth Amendment.

### A. Summary Judgment Standard

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir.1994). A genuine issue of material fact exists only if the record, taken as a whole, could lead a reasonable trier of fact to find in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The burden of demonstrating the absence of any genuine issue of material fact rests on the moving party, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and all ambiguities and inferences that may be reasonably drawn from the facts must be viewed in the light most favorable to the non-moving party. *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir.1991). To defeat summary judgment, the non-moving party must go beyond the pleadings and designate "specific facts showing

that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### 1. Plaintiff's First Amendment Claim

Plaintiff asserts that the defendants deprived him of his First Amendment rights to free speech and to petition the government for redress of grievances. The facts, as alleged by plaintiff, appear to relate more to a deprivation of his right to petition the government than to a deprivation of his right to free speech and, therefore, will be analyzed as such.

Inmates have a constitutional right to petition the government for redress of grievances, and prison officials may not retaliate against inmates for exercising that right. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995). The right to petition the government for redress of grievances includes the right to file lawsuits as well as the right to pursue administrative grievances. *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir.1988).

To establish a claim for retaliation under § 1983, a plaintiff must demonstrate that his conduct was protected by the First Amendment and that the defendants' conduct was motivated by or substantially caused by an exercise of his First Amendment rights. *Gagliardi v. Village of Pawling*, 18 F.3d 188, 194 (2d Cir.1994); *Alnutt v. Cleary*, 913 F.Supp. 160, 168 (W.D.N.Y.1996).

In the instant case, plaintiff alleges that Carriero assaulted him in retaliation for plaintiff's threat to file a complaint against Carriero. I find that plaintiff's conduct in threatening to file a complaint was protected by the First Amendment's guarantee of the right to petition the government for redress of grievance. *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir.1996).

Further, there is some evidence before me that suggests Carriero's alleged assault of plaintiff was in direct retaliation for plaintiff's exercise of that First Amendment right. For example, plaintiff alleges that within minutes of informing Carriero that he was going to file a complaint against him, Carriero assaulted plaintiff. During this assault,

Carriero repeatedly struck plaintiff in the face, each time daring plaintiff to write a complaint against him. After the assault, plaintiff was placed in keeplock confinement.

Although Carriero denies that the alleged assault occurred, this factual controversy must be resolved by the trier of fact. A reasonable jury could conclude that Carriero's alleged treatment of plaintiff was intended to discourage plaintiff from exercising his right to seek redress for his grievances.

In short, I find that there are issues of fact regarding whether Carriero punished plaintiff in anticipatory retaliation for his threatened legal action. Therefore, summary judgment must be denied as to Carriero on plaintiff's First Amendment claim. *Dixon v. Coughlin*, 1995 WL 146193, at *2 (S.D.N.Y. Mar. 31, 1995) (denying summary judgment on inmate's First Amendment claim where correction officer allegedly filed a misbehavior report in retaliation for inmate's statement that he intended to file a grievance against the officer); *Hanna v. Lane*, 1987 WL 6615, at *3 (N.D.Ill. Feb. 9, 1987) (holding that a genuine issue of fact existed on plaintiff's First Amendment claim where correction officer allegedly placed inmate in segregation in retaliation for his threatened legal action); *De Jesus v. Ward*, 441 F.Supp. 215, 217 (S.D.N.Y.1977) (denying summary judgment on inmate's First Amendment claim where correction officers allegedly threatened to punish an inmate because the inmate threatened to institute legal action).

Plaintiff also argues that Coughlin, Malone, and Kelly should be liable on this First Amendment claim because they failed to prevent the incident even though they had a duty to do so. In this Circuit, personal involvement of a defendant in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977). Such involvement may be shown in one of several ways: (1) direct participation in the alleged unconstitutional conduct; (2) failure by a supervisory official to remedy the wrong after learning of the violation; (3) creation by a supervisory offi-

cial of a policy or custom under which unconstitutional practices occurred or allowance of the continuance of such a policy or custom; and (4) gross negligence by a supervisory official in managing subordinates who caused the unlawful condition or event. *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.1986).

■ Plaintiff has not adduced any evidence that Coughlin, Malone, or Kelly was personally involved in the alleged violation of plaintiff's First Amendment rights under any of these approaches. There is simply no evidence before me that any of these three defendants had knowledge of an existing problem between Carriero and the plaintiff or that Carriero, or any other officer for that matter, was interfering with plaintiff's right to petition the government for redress of grievances. What the evidence before me does suggest is that plaintiff wrote to these three defendants *after* the incident. Although it appears that there may have been some problem with the delivery of the letters to Coughlin and Malone, it is clear that Kelly received the letter and immediately acted upon it. Kelly referred the matter to Lieutenant Perkins for investigation. Based on that investigation, it was determined that no action was necessary. Plaintiff also filed a grievance with Kelly on October 27, 1993 concerning the harassment by Carriero. First Deputy Superintendent Brunelle directed Deputy Superintendent for Security Edward Donnelly to investigate. Based on that investigation, Brunelle determined that plaintiff's allegations were unfounded and denied his grievance on November 15, 1993. There is nothing whatsoever in the record to indicate that either investigation was flawed or biased and even if they were, there is nothing to suggest that Kelly, Coughlin, or Malone knew or should have know that fact. For all these reasons, I find that there is no basis for supervisory liability on the part of Coughlin, Malone, or Kelly on plaintiff's First Amendment claim.

### 2. Plaintiff's Eighth Amendment Claim

■ The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. In considering whether a prison official has subjected an inmate to cruel and unusual punishment through the use of excessive force, a court must consider both an objective and a subjective component. *Branham v. Meachum*, 77 F.3d 626, 630 (2d Cir.1996); *Romano v. Howarth*, 998 F.2d 101, 104–05 (2d Cir.1993).

■ Objectively, the plaintiff must establish that the alleged deprivation is sufficiently serious or harmful enough to reach constitutional dimensions. *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir.1997); *Romano*, 998 F.2d at 105. The Eighth Amendment's prohibition against cruel and unusual punishment "necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9–10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (quotations omitted). Therefore, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973). Indeed, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9.

Subjectively, the plaintiff must establish that the defendants acted wantonly. *Branham*, 77 F.3d at 630. Specifically, in the context of an Eighth Amendment excessive force claim, plaintiff must demonstrate that the defendants acted "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7.

Here, plaintiff alleges that Carriero grabbed him behind the neck and hit him several times across the neck and face and in the eye. The medical report completed after the incident notes a small bump under plaintiff's eye. I find that the conduct alleged here by plaintiff does not reach constitutional dimensions. The amount of force used in this case was de minimis. *Brown v. Busch*, 954 F.Supp. 588, 597 (W.D.N.Y.1997) (finding that an officer's pushing, shoving, and striking of an inmate was a de minimis use of force); *DeArmas v. Jaycox*, 1993 WL 37501, at *4 (S.D.N.Y. Feb. 8, 1993) (determining

that an officer's punching and kicking of an inmate was a de minimis use of force), *aff'd* 14 F.3d 591 (2d Cir.1993).

Moreover, the fact that plaintiff has stated a claim under the First Amendment makes it unnecessary to consider his Eighth Amendment claim, since both arise out of the same facts. *Burton v. Livingston*, 791 F.2d 97, 101 n. 2 (8th Cir.1986); *Brown v. Coughlin*, 965 F.Supp. 401, 405 (W.D.N.Y.1997).

For these reasons, summary judgment is granted on plaintiff's Eighth Amendment claim as to all defendants.

### 3. Plaintiff's Fourteenth Amendment Claim

■ Plaintiff also alleges that the defendants denied him equal protection of the law as guaranteed by the Fourteenth Amendment. Plaintiff has not, however, alleged any facts which would even colorably state a claim for denial of equal protection. He does not allege that he was treated differently from other similarly situated inmates or that he was discriminated against because he was a member of a certain class. In fact, he simply does not allege any disparate treatment based upon invidious discrimination. *Carlen v. Department of Health Servs.*, 912 F.Supp. 35, 41 (E.D.N.Y.), *aff'd*, 104 F.3d 351 (2d Cir.1996). Plaintiff's wholly conclusory allegations fail to allege an equal protection violation. *Barnes v. Starks*, 1996 WL 648956, at *5 (S.D.N.Y. Nov. 6, 1996). Accordingly, summary judgment is granted on plaintiff's Fourteenth Amendment claim as to all defendants.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part. Summary judgment is granted with respect to plaintiff's First, Eighth, and Fourteenth Amendment claims against defendants Coughlin, Malone, and Kelly, and the complaint is dismissed in its entirety as to them. Summary judgment is granted with respect to plaintiff's Eighth and Fourteenth Amendment claims against defendant Carriero. Summary judgment is de-

nied with respect to plaintiff's First Amendment claim against defendant Carriero.

IT IS SO ORDERED.